AF Approval __NA____                                     Chief Approval ___MPF___

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                                      CASE NO. 6:22-cr-148-PGB-LHP

ANDI JUNIOR JACQUES

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, ANDI JUNIOR JACQUES, and the attorneys for the defendant, Ade A. Griffin, Esq., and Andrew Charles Strecker, Esq., mutually agree as follows:

**A.**   **Particularized Terms**

    1.   Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and Four of the Indictment. Count One charges the defendant with RICO Conspiracy, in violation of 18 U.S.C. § 1962(d). Count Four charges the defendant with Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1).

    2.   Minimum and Maximum Penalties

Count One is punishable by a maximum term of imprisonment of 20 years; a fine of not more than $250,000; a term of supervised release of not more than 3 years, and a special assessment of $100.

Defendant's Initials ___A J___

Count Four is punishable by a mandatory term of imprisonment of 2 years, which must run consecutively to the term of imprisonment imposed for Count One; a fine of not more than $250,000; a term of supervised release of not more than 1 year; and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.    Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

First:       Two or more people agreed to try to accomplish an unlawful plan to participate in the affairs of an enterprise through a pattern of racketeering activity;

Second:      The unlawful plan affected interstate commerce;

Third:       The defendant knowingly and willfully joined in the conspiracy; and

Fourth:      When the defendant joined in the agreement, the defendant had the specific intent to participate in the enterprise's affairs, knowing that other members of the conspiracy would commit at least two other acts of racketeering and intending to help them as part of a pattern of racketeering activity.

Defendant's Initials _____        2

The elements of Count Four are:

First:    The defendant knowingly transferred, possessed, or used
          another person's means of identification;

Second:   Without lawful authority;

Third:    During and in relation to a felony conspiracy to commit wire
          fraud, in violation of 18 U.S.C. § 1349; and

Fourth:   The defendant knew that the means of identification belonged to
          an actual person.

4.    Count Dismissed

At the time of sentencing, the remaining count against the defendant,

Count Two, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's

Office for the Middle District of Florida agrees not to charge defendant with

committing any other federal criminal offenses known to the United States

Attorney's Office at the time of the execution of this agreement, related to the

conduct giving rise to this agreement.

6.    Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full

restitution to the United States Treasury, identity theft victims, and Certified Public

Defendant's Initials AJ          3

Accounting or tax preparation firms that were unlawfully breached during the course of the conspiracy charged in Count One.

7.   Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Defendant's Initials  A͡J          4

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.     Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 1963, whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any

Defendant's Initials A J          5

forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be

Defendant's Initials _A J_                     6

polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the

Defendant's Initials ⌢̲̅⏜̲̅            7

abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

      10.   Removal - Notification

          The defendant has been advised and understands that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, the offense to which defendant is pleading guilty may be a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that may result from the defendant's guilty plea, even if the consequence is the defendant's automatic removal from the United States following completion of the defendant's sentence.

Defendant's Initials ___A J___        8

**B.** **Standard Terms and Conditions**

    1.    Restitution, Special Assessment and Fine

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

        On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2.    <u>Supervised Release</u>

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Defendant's Initials           10

5.   Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit

Defendant's Initials _____          11

reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

      6.   Sentencing Recommendations

          It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

Defendant's Initials _____       12

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials ⎰⎱            13

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty,

Defendant's Initials _____        14

defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _____          15

13.    Certification

The defendant and defendant's counsel certify that this plea agreement

has been read in its entirety by (or has been read to) the defendant and that defendant

fully understands its terms.

DATED this _14_ day of ~~July~~, 2023.

ROGER B. HANDBERG
United States Attorney

_____
ANDI JUNIOR JACQUES
Defendant

_____
Dana E. Hill
Assistant United States Attorney

_____
Ade A. Griffin, Esq.
Attorney for Defendant

_____
Matthew J. Del Mastro
Special Assistant U.S. Attorney

_____
Andrew Charles Strecker, Esq.
Attorney for Defendant

_____
Chauncey A. Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division

Defendant's Initials _AJ_                 16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                         CASE NO. 6:22-cr-148-PGB-LHP

ANDI JUNIOR JACQUES

### PERSONALIZATION OF ELEMENTS

As to Count One:

    **First:**    Between on or about December 21, 2015, and March 19, 2019, did two or more people agree to try to accomplish an unlawful plan to participate in the affairs of an enterprise through a pattern of racketeering activity?

    **Second:**    Did the unlawful plan affect interstate commerce?

    **Third:**    Did you knowingly and willfully join in the conspiracy?

    **Fourth:**    When you joined in the agreement, did you have the specific intent to participate in the enterprise's affairs, knowing that other members of the conspiracy would commit at least two other acts of racketeering and intending to help them as part of a pattern of racketeering activity?

As to Count Four:

    **First:**    On or about February 6, 2018, did you knowingly transfer, possess, or use a means of identification belonging to K.M.O.?

    **Second:**    Did you do so without lawful authority?

    **Third:**    Did you do so during and in relation to a felony conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349?

    **Fourth:**    Did you know that K.M.O was an actual person?

Defendant's Initials A J       17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                              CASE NO. 6:22-cr-148-PGB-LHP

ANDI JUNIOR JACQUES

## FACTUAL BASIS

On or about January 12, 2017, the server of an accounting firm in Orlando,

Florida, identified in the Indictment as Business-11, was breached, and the

personally identifiable information (PII) of Business-11's clients was thereafter stolen

from the server and then used to file false tax returns with the IRS.  The FBI initiated

an investigation and identified a corrupt enterprise operating in the Middle District

of Florida and nationwide to obtain PII for the purpose of committing wire fraud and

mail fraud by submitting false tax returns and retrieving the proceeds of this offense.

The FBI determined that, from at least December 21, 2015, through at least March

19, 2019, Defendant ANDI JUNIOR JACQUES, as well as coconspirators

MONIKA SHAUNTEL JENKINS, LOUISAINT JOLTEUS, VLADIMYR

CHERELUS, JEFF PROPHT-FRANCISQUE, ALAIN JEAN-LOUIS, MICHAEL

JEAN POIX, DICKENSON ELAN, LOUIS NOEL MICHEL, deceased

coconspirator "Rich4ever4430," and others were part of that unlawful and corrupt

enterprise involving the submission of false and fraudulent tax returns based on

Defendant's Initials                 18

stolen PII ("Enterprise"). The FBI's investigation revealed the following true facts about this Enterprise and JACQUES's involvement in this Enterprise:

### JACQUES's Role

In the course of this Enterprise, Defendant JACQUES was a resident of Florida. Members of the Enterprise accessed a dark web market that sold illegally obtained credentials of compromised computer servers ("Marketplace"). They would use the Marketplace to purchase credentials of compromised computer servers to steal PII of taxpayers that the conspirators would later use to file false and fraudulent tax returns. JACQUES's coconspirators used the Marketplace to steal Electronic Filing Identification Numbers ("EFINs") and Preparer Tax Identification Numbers ("PTINs") – credentials used by tax preparers to file tax returns – so that they could file fraudulent and false tax returns using the stolen PII. JACQUES and his coconspirators would also create new businesses purporting to be legitimate tax preparation firms and obtain real EFINs on behalf of these sham businesses that were then used to file fraudulent and false tax returns using stolen PII. JACQUES or his coconspirators also used stolen PII to file false and fraudulent tax returns as though they were submitted by taxpayers independently, not through a CPA or accounting firm ("Self-Prepared Returns"). JACQUES or his coconspirators additionally used compromised computer servers to access and modify financial accounts used to receive the tax refunds obtained from the IRS when the fraudulently

Defendant's Initials A J          19

submitted returns were accepted. Finally, JACQUES or his coconspirators withdrew fraud proceeds from bank accounts created to receive the fraudulently obtained tax refunds as a result of the fraudulent and corrupt Enterprise.

JACQUES worked directly with JEAN POIX, ELAN, JOLTEUS, and "Rich4ever4430" in furtherance of this unlawful Enterprise. JACQUES worked indirectly and through other coconspirators associated with "Rich4ever4430" in this same corrupt Enterprise. JACQUES has had a long personal relationship with JEAN POIX and ELAN and has committed tax fraud with them in the past. In 2012, JACQUES and JEAN POIX were investigated together for submitting fraudulent tax returns and using the bank account of an individual with diminished capacity to receive and distribute fraud proceeds. As discussed further below, before working with Rich4ever4430 and his associates to file false tax returns using stolen bulk PII from the Marketplace, JACQUES conspired with ELAN to create a series of sham tax preparation businesses to file false tax returns and claim fraudulent refunds.

Each false tax return filed in the course of this corrupt Enterprise was filed with the intent to defraud as part of a scheme to defraud by using false or fraudulent pretenses or representations about material facts and through the use of communications transmitted via wires in interstate commerce.

Defendant's Initials ⎍⏌                    20

***Dee Dee Multi-Services, Inc. (DMS), AAJR Multiservices (AAJR),***
***and Madrina/RP Tax (RP Tax)***

On or about September 9, 2013, JACQUES registered Dee Dee Multi-

Services, Inc., (DMS) as a fictitious Florida business using the PII of Person-5, the

mother of JACQUES's child.  The purpose of creating DMS was to create a sham

tax preparation firm and use this fake business to obtain EFINs and file false tax

returns.  JACQUES used the PII of Person-5 and others to obtain EFINs and PTINs

that were used to file false tax returns through DMS.  In or about December 2014,

JACQUES registered six DMS EFINs with Sigma Tax, a reseller of tax software and

services, to obtain Drake tax preparation software and refund transfer bank products,

including debit cards and check stock.  JACQUES registered with Sigma Tax and

Drake a bank account he created and controlled, in the name of "ANJT

Multisevices" [sic.] to collect tax preparer fees.  Altogether, JACQUES, ELAN, and

others working at their direction caused to be filed, and aided and abetted the filing

of, approximately 605 false tax returns through DMS, claiming more than $1.7

million in tax refunds.  Tax preparer fees for false returns that were accepted by the

IRS were deposited into JACQUES's ANJT Multisevices bank account as well as a

bank account he had created using Person-5's PII.

On or about June 28, 2014, JACQUES used an alias, "Anthony Adams" to

register AAJR Multiservices (AAJR) as a fictitious business in Florida.  The purpose



Defendant's Initials                    21

of creating AAJR was to create a sham tax preparation firm and use this fake

business to obtain EFINs and file false tax returns. JACQUES used the PII of others

to obtain EFINs and PTINs that were used to file false tax returns through AAJR.

In or about December 2014, JACQUES registered seven AAJR EFINs with Sigma

Tax and Drake to receive tax preparation software and refund transfer bank

products, including debit cards and check stock. JACQUES requested that all bank

products be shipped to an office location that he and ELAN had rented. JACQUES

also registered with Sigma Tax and Drake two bank accounts he created and

controlled with ELAN to receive preparer fees. In total, from on or about January

20, 2015, through on or about August 22, 2015, JACQUES, ELAN, and others

working at their direction caused to be filed, and aided and abetted the filing of,

approximately 1,853 false tax returns through AAJR, claiming more than $6.7

million in tax refunds. Tax preparer fees for false returns that were accepted by the

IRS were deposited into JACQUES bank accounts.

On or about December 16, 2014, JACQUES registered "Madrina Tax" as a

fictious business in Florida. The purpose of creating Madrina Tax (RP Tax) was to

create a sham tax preparation firm and use this fake business to file false tax returns.

Preparer fees for these false tax filings were deposited into a bank account under the

name of RP Tax Services, Inc. In total, from on or about January 31, 2015, through

on or about April 15, 2015, members of the Enterprise caused to be filed, and aided

Defendant's Initials      22

and abetted the filing of, approximately 67 false tax returns through RP Tax,

claiming approximately $277,827 in tax refunds.

### Edvert Tax Prep (Edvert)

On or about December 10, 2015, JACQUES and his coconspirators registered

Edvert Tax Prep (Edvert) as a fictitious business in Florida. The purpose of creating

Edvert was to create a sham tax preparation firm and use this fake business to obtain

EFINs and file false tax returns in support of the unlawful Enterprise. Edvert was

registered with the name of Person-1 as a point of contact. Person-1 was not involved

in the operation of Edvert or aware of its unlawful operations.

JACQUES and ELAN obtained at least eight EFINs from the IRS for Edvert

and leased commercial office space in West Palm Beach, Florida for Edvert's

operation. On or about December 28, 2015, JACQUES registered eight Edvert

EFINs with Sigma Tax to obtain tax preparation software and refund transfer bank

products, including debit cards and check stock. The IP address for the office space

JACQUES and ELAN rented was later used to file numerous false and fraudulent

tax returns through Edvert and the sham EFINs obtained purportedly to conduct real

tax preparation services through this company. During this time, JACQUES was

using a phone number ending x0583 and ELAN was using a phone number ending

x8209. From December 18, 2015, through February 14, 2016, during the time when

Defendant's Initials _____      23

Edvert was being established and started submitting false returns, JACQUES and ELAN exchanged more than 550 phone calls.

During this time, ELAN helped to connect JACQUES and "Rich4ever4430." On January 13, 2016, ELAN was sent a photo of "Rich4ever4430" via email. Eight minutes later, ELAN forwarded the photo to JACQUES. One week later, on January 20, 2016, JACQUES, ELAN, and their coconspirators began to file fraudulent tax returns using the PII of Victim Firm-17, a CPA firm in Arizona. "Rich4ever4430" had an image in his encrypted cloud storage account showing live, real-time access to the server from Victim Firm-17, including access to PII of clients of Victim Firm-17 and a PTIN associated with Victim Firm-17. From January 20 through February 24, 2016, members of the Enterprise filed approximately 115 returns through Edvert using PII from Victim Firm-17.

On January 19, 2016, ELAN sent JACQUES an email with one of the EFINs obtained for Edvert and the passwords for tax preparation software obtained for Edvert. On that same day, ELAN and JACQUES's coconspirators began using that Edvert EFIN to file returns with stolen PII. Over the next six weeks, that specific Edvert EFIN filed 162 false returns (claiming more than $1 million) using bulk PII from various entities, including AAJR, DMS, and Victim Firm-16, a CPA firm in Minnesota. On or about February 15, 2016, "Rich4ever4430" purchased the credentials from the compromised sever of Victim Firm-16 from the Marketplace.

Defendant's Initials  A J          24

From February 16 through March 22, 2016, JACQUES's coconspirators used four of Edvert's EFINs to file approximately 382 returns using the PII of Victim Firm-16's clients, claiming approximately $1.74 million in refunds.

Altogether, between on or about January 19, 2016, and on or about April 29, 2016, JACQUES and other members of the Enterprise filed, caused to be filed, and aided and abetted the filing of approximately 1,046 false tax returns using stolen PII through Edvert, claiming more than $5.1 million in tax refunds.

### *FSL Multiservices LLC (FSL), Yvelene Tax Solutions LLC (YTS), Morton Fast Refund (MFR), and SC Accounting and Tax Services (SCA)*

In or about November 2016, JACQUES and other members of the Enterprise registered FSL Multiservices LLC (FSL) and Yvelene Tax Solutions LLC (YTS) with the state of Florida. In or about January 2017, JACQUES and his coconspirators registered Morton Fast Refund (MFR) with the state of Florida. The purpose of creating these entities was to create sham tax preparation firms and use these fake businesses to obtain EFINs and file false tax refunds in support of the unlawful Enterprise. FSL was registered with the name of a friend of JACQUES. ELAN used JACQUES's friend's name and a phone number for JEAN POIX to create an email address for FSL, fslmultiservices@gmail.com at ELAN's Tampa residence.

In or about October 2016, December 2016, and January 2017, JACQUES and other members of the Enterprise obtained multiple EFINs for FSL, YTS and MFR.

Defendant's Initials                 25

In or about March 2017, JACQUES and his coconspirators also obtained multiple EFINs for an additional sham tax preparation business they created, named SC Accounting and Tax Services (SCA). JACQUES used these EFINs to apply for tax preparation software and refund transfer bank products that he and his coconspirators subsequently used to file false tax returns and obtain the refunds.

On or about December 20, 2016, JACQUES and ELAN used fslmultiservices@gmail.com to correspond with Cashpass, a provider of prepaid debit cards, to obtain debit cards onto which tax refunds could be loaded. JACQUES and his coconspirators used Cashpass cards obtained with the FSL email address to load refunds the Enterprise had obtained by filing false tax returns through YTS and MFR. In February 2017, when a representative of Cashpass reached out to fslmultiservices@gmail.com about "questions" raised about "tax deposits going into cards that you set up," JACQUES falsely communicated through email and his telephone number with the representative of Cashpass to reassure the representatives about those questions.

On or about February 3, 2017, members of the Enterprise used fslmultiservices@gmail.com to record the name of J.B. and a PTIN that members of the Enterprise had registered in J.B.'s name. "Rich4ever4430" had obtained J.B.'s PII through a computer server breach of Victim Firm-18, a CPA firm in Orlando. Beginning on or about February 4, 2017, through March 7, 2017, members of the

Defendant's Initials 〔 〕          26

Enterprise used PII stolen from various tax preparation and CPA firms to file false returns through FSL, using the PTIN in J.B.'s name.

Similarly, JACQUES and other members of the Enterprise used PII stolen from various tax preparation and CPA firms by "Rich4ever4430" and other coconspirators to file false tax returns through YTS, MFR, and SCA. Some of the stolen PII used to file false tax returns through YTS, MFR, and SCA, was stored in the FSL email account, fslmultiservices@gmail.com.

JACQUES also participated in withdrawing money from cards issued through FSL. On February 17, 2019, location data associated JACQUES's email corresponds to $19,155 in withdrawals from cards that held refunds issued as a result of the FSL fraudulently obtained tax returns.

In total, from on or about January 23, 2017, through on or about March 8, 2017, JACQUES and other members of the Enterprise filed, caused to be filed, and aided and abetted the filing of, approximately 661 false tax returns using stolen PII through FSL, claiming more than $3 million in tax refunds. From on or about January 26, 2017, through on or about March 7, 2017, JACQUES and other members of the Enterprise filed, caused to be filed, and aided and abetted the filing of, approximately 455 false tax returns through YTS, claiming more than $2.4 million in tax refunds. From on or about January 26, 2017, through on or about March 8, 2017, JACQUES and other members of the Enterprise filed, caused to be

Defendant's Initials  _____          27

filed, and aided and abetted the filing of approximately 828 tax returns through MFR, claiming more than $4.5 million in tax refunds. From on about March 22, 2017, through on or about April 9, 2017, JACQUES and other members of the Enterprise filed, caused to be filed, and aided and abetted the filing of, approximately 303 tax returns through SCA, claiming more than $1.5 million in tax refunds.

### *Chantol Multiservices (CMS)*

JACQUES worked with JEAN POIX, ELAN, and others to create and operate a corrupt business, Chantol Multiservices (CMS), to advance the aims of the corrupt Enterprise. Fake and fraudulent tax returns reflected essentially all of the tax returns submitted through CMS; CMS was a sham business created for the purpose of advancing the unlawful and fraudulent tax refund scheme and the unlawful Enterprise.

Starting in November 2017, JEAN POIX worked with Person-4 to establish CMS as a purported tax preparation firm, using Person-4's identity, address, and phone number to facilitate the Enterprise's tax fraud. In January 2018, Person-4, working at the direction of JEAN POIX and his coconspirators, had Person-4's fingerprints taken to obtain the EFINs used in this scheme to file fraudulent returns. In January 2018 and February 2018, members of the Enterprise—including JACQUES and JEAN POIX —obtained five EFINs from the IRS purportedly for use by CMS in legitimate tax preparation. JACQUES used theses EFINs to apply

Defendant's Initials A J          28

for tax preparation software and refund transfer bank products that his coconspirators subsequently used to file false tax returns and obtain the refunds.

On or about January 11. 2018, "Rich4ever4430" purchased from the Marketplace credentials for a compromised computer server of Victim Firm-15, a CPA firm in Minnesota. Thereafter, members of the Enterprise used PII stolen from the computer server of Victim Firm-15 to file false tax returns through CMS. From January 31 through February 26, 2018, CMS filed approximately 377 returns using the PII of Victim Firm-15's clients, claiming approximately $1.89 million in refunds.

One of the individuals whose PII was stolen by the Enterprise from Victim Firm-15 and whose PII was possessed, used, and transferred by Jacques and his coconspirators to file a false tax return through CMS's EFIN was K.M.O. K.M.O. was an actual person and JACQUES and others in the conspiracy knew that K.M.O. was an actual person at the time they transferred, possessed, and used K.M.O.'s PII in the course of submitting false and fraudulent tax returns. The fraudulent tax return was filed for K.M.O. on or about February 6, 2018.

In total, in 2018, JACQUES worked with JEAN POIX, ELAN, and "Rich4ever4430" to file, cause to be filed, and aid and abet the filing of, approximately 441 false tax returns using stolen PII through CMS, claiming more than $2.2 million in tax refunds.

Defendant's Initials _A J_                29

*Victims and Losses Attributable to Corrupt Enterprise*

In the course of this corrupt Enterprise, the participants filed 9,214 tax returns using fraudulently stolen PII and EFINs, claiming a total amount of refunds of more than $45 million. The IRS accepted many of these returns, paying an estimated total of more than $6 million in fraudulent refunds. The following reflects an estimation of the total amounts claimed on fraudulent tax returns using stolen EFINs, stolen PII, and EFINs associated with firms like FSL that were created by the members of the Enterprise to advance the fraudulent aims of the Enterprise.

| Entity whose EFIN was Used | Fraudulent Tax Returns Submitted | Amounts Fraudulently Claimed |
|---|---|---|
| Morton Fast Refund (MFR) | 828 | $4,532,354 |
| SC Accounting and Tax Services (SCA) | 303 | $1,558,327 |
| Chantol Multiservices (CMS) | 441 | $2,223,395 |
| Yvelene Tax Services (YTS) | 455 | $2,476,789 |
| FSL Multiservices (FSL) | 664 | $3,099,291 |
| Edvert Tax Prep (EDV) | 1046 | $5,140,673 |
| AAJR Multiservices (AAJR) | 1853 | $6,767,992 |
| Deedee Multiservices (DMS) | 605 | $1,728,728 |
| RP Tax | 67 | $277,827 |
| Victim Firm-1 | 331 | $1,464,738 |
| Victim Firm-2 | 57 | $294,887 |
| Victim Firm-3 | 109 | $551,234 |
| Victim Firm-4 | 175 | $1,145,257 |
| Victim Firm-5 | 214 | $1,577,384 |
| Victim Firm-6 | 219 | $1,143,764 |
| Victim Firm-7 | 147 | $452,150 |
| Victim Firm-8 | 296 | $2,099,859 |
| Victim Firm-9 | 158 | $1,035,240 |
| Victim Firm-10 | 277 | $1,454,602 |
| Self-prepared | 969 | $6,409,684 |
| **TOTALS** | **9,214** | **$45,434,175** |

Defendant's Initials ___

Based on the evidence and investigation, the United States calculates the losses attributable to the Defendant's participation includes the tax refunds fraudulently submitted through AAJR, DMS, RP Tax, Edvert, FSL, YTS, MFR, SCA, and CMS.

In all of this conduct, two or more people agreed to try to accomplish an unlawful plan to participate in the affairs of an enterprise through a pattern of racketeering activity, this unlawful plan affected interstate commerce, JACQUES knowingly and willfully joined in the conspiracy, and, when JACQUES joined in the agreement, JACQUES had the specific intent either to personally participate in committing at least two other acts of racketeering, or else to participate in the enterprise's affairs, knowing that other members of the conspiracy would commit at least two other acts of racketeering and intending to help them as part of a pattern of racketeering activity.

In addition, on or about February 6, 2018, JACQUES knowingly transferred, possessed, or used, or aided and abetted the transfer, possession or use of, without lawful authority, the name and social security number of K.M.O., during and in relation to conspiracy to commit wire fraud, knowing that such means of identification belonged to an actual person.

Defendant's Initials ⟨ ⟩          31